UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
EZEKIEL FREDERICK, DANIEL I.    :
FREDERICK, and AARON T. FREDERICK,   :
all *pro se*,    :
   :        **OPINION AND ORDER**
       Plaintiffs,   :      13-CV-7364 (DLI) (LB)
   :
    -against-    :
   :
WELLS FARGO HOME MORTGAGE,   :
FINANCIAL EQUITIES MORTGAGE   :
BANKERS, NEW PENN FINANCIAL, LLC,  :
JEFF DOOCY, TOM MARINO, and   :
MERISSA SERNA,    :
   :
      Defendants.   :
-------------------------------------------------------- X

**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se*[1] plaintiffs Ezekiel Frederick, Daniel I. Frederick, and Aaron T. Frederick (collectively, "Plaintiffs") brought this against defendants Wells Fargo Home Mortgage ("WF"), Financial Equities Mortgage Bankers ("FEM"), and New Penn Financial, LLC ("NPF") (collectively, "Corporate Defendants"), and Jeff Doocy, Tom Marino, and Merissa Serna (collectively, "Individual Defendants") (collectively with the Corporate Defendants, "Defendants"), asserting twenty-three causes of action pertaining to the Corporate Defendants' alleged denial of mortgage loan applications under the Federal Housing Administration's 203(k) program. Defendants jointly moved to dismiss Plaintiffs' action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Plaintiffs filed   a motion for "dismissal," but which was actually, *inter alia*, a motion for

---

[1] In reviewing the complaint, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the Court interprets the complaint "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

judgment on the pleadings and to strike various portions of Defendants' motion.  For the reasons

below, Defendants' motion is granted, and Plaintiffs' motion is denied.

## BACKGROUND

In their complaint, Plaintiffs claim that the Corporate Defendants engaged in a concerted

effort, through their employees, the Individual Defendants, to deny wrongfully Plaintiffs'

mortgage loans under the Federal Housing Administration's 203(k) program.  (*See generally*

Second Amended Complaint ("SAC."), Docket Entry No. 23.)  More specifically, Plaintiffs

allege that the Corporate Defendants "knowingly and willfully designed, implemented and

maintained facially neutral Fair Housing Act ("FHA") underwriting policy overlays that

effectively robbed [Plaintiffs] of their lawful entitlement to rental income credits[,] making FHA

mortgage loans and home ownership unavailable to otherwise qualified Plaintiffs, in furtherance

of a racially charged overarching scheme and conspiracy."  (*Id.* at 15.)

Plaintiffs have brought these same claims twice before.  On February 3, 2012, Plaintiffs

simultaneously filed (1) complaints with the New York State Division of Human Rights

("DHR") and the United States Department of Housing and Urban Development ("HUD"),

alleging violations of Article 15 of the New York Executive Law and the federal Fair Housing

Act ("FHA") as to each Corporate Defendant (the "Administrative Complaints"); and (2) a civil

complaint in this Court (Docket No. 12-cv-00553), alleging violations of the Racketeer

Influenced and Corrupt Organization Act ("RICO"); 42 U.S.C. §§ 1981, 1982, 1985, and 1988;

the FHA; the Equal Credit Opportunity Act ("ECOA"); and the New York State Consumer Fraud

Act; as well as common law claims for fraud, breach of fiduciary duty, conspiracy, and

negligence (the "2012 Action").  Plaintiff Ezekiel Frederick was the only named plaintiff in the

2012 Action, but (1) he purported to file the complaint in that matter on behalf of a putative class

that included Plaintiffs Daniel I. Frederick and Aaron T. Frederick, and (2) the purported transactions and occurrences on which the complaint in that matter were based are the same as those that allegedly give rise to the SAC. (*See generally* Complaint, Docket No. 12-cv-00553, Docket Entry No. 1.) HUD referred the Administrative Complaints to the DHR, which issued a "Determination and Order after Investigation" ("Determination and Order") as to each Corporate Defendant, finding that there was no probable cause to believe discrimination had occurred. Plaintiffs did not exercise their right to appeal via a petition to the New York Supreme Court. (*See* Declaration of Patrick J. Dempsey, Docket Entry No. 45, Exhibits 1-3.)[2] The Court dismissed the 2012 Action pursuant to 15 U.S.C. § 1915(e)(2)(B)'s frivolousness review, concluding that Plaintiffs had failed to state claim for relief. (*See* Memorandum and Order, Docket No. 12-cv-00553, Docket Entry No. 6.)

On June 11, 2014, Plaintiffs filed the SAC, again alleging similar violations of RICO; Sections 1981, 1982, 1985, and 1986 of Title 42 of the U.S. Code, Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d, *et seq*.); the FHA; the ECOA; and the New York Consumer Fraud Act; as well as common law claims for fraud, breach of fiduciary duty, conspiracy, and negligence. Plaintiffs assert that from September 2011 to January 2012, they engaged in "extensive discussions" with, and submissions to, Defendants regarding prospective loans for the purchase of three and four-unit properties located in Brooklyn, Jamaica, Woodhaven, and Far Rockaway, New York. (SAC at 1-2.) Plaintiffs further claim, that upon learning of their race

---

[2] Although a court deciding a Rule 12(b)(6) motion generally is limited to considering the facts alleged in the complaint, a district court may also consider documents appended to the complaint, documents incorporated by reference, and matters of which judicial notice may be taken. *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Further, a court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." *Evans v. New York Botanical Garden*, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (citations omitted). Accordingly, the Court takes judicial notice of the DHR's rulings on the Administrative Complaints at the Rule 12(b)(6) stage in this matter because (1) Plaintiffs reference the Administrative Complaints in the SAC, and (2) administrative records are public records. *See Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (considering DHR records on defendants' motion to dismiss).

and the racial composition of the neighborhoods where the properties were located, Defendants engaged in a conspiracy to deny Plaintiffs, as African-Caribbean Americans, of their right to these loans and the associated FHA 203(k) rental income credits associated with those loans. (*Id*.at 1-2.)  For similar reasons underlying the Court's dismissal of the 2012 Action, the SAC is devoid of the factual allegations required to state a claim and, therefore is dismissed with prejudice.

## DISCUSSION

### I.      Motion to Dismiss Standard

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678.  For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice" to insulate a claim against dismissal. *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Notably, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## II.    Plaintiffs Fail to State a Claim Under the Anti-Discrimination Statutes

Plaintiffs assert their causes of action under myriad federal and state anti-discrimination laws, namely the FHA, the ECOA, Sections 1981, 1982, 1985, and 1986 of Title 42 of the U.S. Code, Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d, *et seq.*), and New York Executive Law § 297. Plaintiffs fail to adequately plead any of these claims.

### a.    Failure to Allege Intentional Discrimination Bars Plaintiffs' Civil Rights Claims

Plaintiffs have failed to allege sufficiently that Defendants intentionally discriminated against Plaintiffs, which is fatal to their civil rights claims. "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts . . .)." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam).

To state a claim for relief under section 1982, a plaintiff must allege that he was intentionally "deprived of a property right" because of his race. *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 295 (S.D.N.Y. 2011).

"Section 1985(3) prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protections of the laws." *Barkley v. Olympia Mortgage, Co.*, 2007 WL 2437810, at *10 (E.D.N.Y. Aug. 22, 2007). The elements of a § 1985(3) claim are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian*, 7 F.3d at 1087. "[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (citation and internal quotation marks omitted). "[A] § 1986 claim must be predicated upon a valid § 1985 claim." *Id.*

"To state a claim under Title VI, a plaintiff must plead, among other things, 'that the defendant discriminated against him on the basis of race, that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions.'" *Williams v. City Univ. of N.Y.*, 2011 WL 6934755, at *5 (E.D.N.Y. Dec. 30, 2011) (quoting *Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001)).

In short, to state a claim for violations of the civil rights statutes set out in Sections 1981, 1982, and 1985 of Title 42 of the U.S. Code, a plaintiff must "plead facts showing that the defendants acted with discriminatory animus," that is, an intent to discriminate. *Morales v. City of N.Y.*, 752 F.3d 234, 238 (2d Cir. 2014) (affirming dismissal of Section 1981 and 1985 claims); *accord McKnight v. Middleton*, 699 F. Supp. 2d 507, 529, 531 (E.D.N.Y. 2010) (dismissing Section 1981, 1982, 1985, and 1986 claims). Similarly, Title VI "prohibits only intentional

discrimination." *See Alexander v. Sandoval*, 532 U.S. 275, 279-81, 288-93 (2001); *see also Kajoshaj v. N.Y. City Dep't of Ed.*, 543 F. App'x 11, 14-15 (2d Cir. 2013) (affirming dismissal of Title VI claim where plaintiff failed to allege intentional discrimination).

Here, Plaintiffs' allegations that they suffered unconstitutional discrimination and their claims of a conspiracy to deprive them of constitutional rights are vague and conclusory. Plaintiffs fail to allege any facts adequate to show or raise a plausible inference of discriminatory intent on the part of Defendants or of a conspiracy in violation of 42 U.S.C. §§ 1981, 1982, 1985, and 1986. *See Brito v. Arthur*, 403 Fed. Appx. 620, 621 (2d Cir. 2010) (summary order) (affirming dismissal of §§ 1985(3) and 1986 claims where, "[a]side from conclusory assertions, [plaintiff] failed to provide any factual allegations that [defendants] engaged in a conspiracy, or that they were motivated by unlawful discriminatory intent or animus"); *see also Sajimi v. City of N.Y.*, 2011 WL 135004, at *7 (E.D.N.Y. Jan. 13, 2011) ("'[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" (quoting *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997))). Plaintiffs' failure to plead adequately that Defendants were motivated by a discriminatory animus is similarly fatal to their Title VI claim. *See Williams*, 2011 WL 6934755 at *5 (dismissing a 42 U.S.C. § 2000d claim where it did "not contain any factual allegation sufficient to allow a plausible inference that the [defendant's] actions were motivated by discriminatory animus"). Accordingly, Plaintiffs' Title 42 claims are dismissed for failure to state a claim upon which relief may be granted.[3]

---

[3] The Court also notes claims under 42 U.S.C. § 1986 must be commenced within one year after the cause of action has accrued. *See* 42 U.S.C. § 1986; *see also Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001). The alleged conduct of which Plaintiffs complain, by their own admission, ceased on or about January 8, 2012. (*See* SAC at 1.) Yet, Plaintiffs did not commence this action until December 30, 2013. Thus, Plaintiffs' Section 1986 claim also is barred by the statute of limitations.

**b. Plaintiffs' NYHRL Claim Is Barred by the Doctrine of Election of Remedies**

Plaintiffs purport to assert claims under New York Executive Law § 297, but do not provide any further discussion of these claims. In order to liberally construe Plaintiffs' *pro se* complaint, the Court will consider Plaintiffs to be asserting their strongest possible claims under New York State Human Rights Law ("NYHRL"). NYHRL, which creates a private right of action for unlawful discriminatory practices, requires an allegedly aggrieved person to elect between filing a civil suit or an administrative complaint, with the election of one remedy barring the other. This "election of remedies" provision provides that an individual may bring suit in court "unless such person had filed a complaint . . . with any local commission on human rights." N.Y. Exec. Law § 297(9). Here, Plaintiffs' filing of the Administrative Complaints, which were adjudicated and included the same alleged acts of discrimination that Plaintiffs assert in the instant action, constitutes the election of a remedy that now bars this Court from adjudicating the same claims. *See id.*; *see also Moodie v. Fed. Reserve Bank of New York*, 58 F.3d 879, 884 (2d Cir. 1995) (holding that adjudication by DHR "poses an insuperable jurisdictional bar" to federal litigation of NYHRL claim). Because the Court lacks subject matter jurisdiction over Plaintiffs' NYHRL claims, these claims are dismissed.

**III. Plaintiffs Fail to Assert a Cause of Action Under the FHA or the ECOA**

Plaintiffs assert claims under both the FHA and the ECOA. Section 3604(b) of the FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Section 3605(a) makes it unlawful for anyone "whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a

transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." *Id.* § 3605(a). A "[r]esidential real estate-related transaction" means "(1) [t]he making or purchasing of loans or providing other financing assistance . . . for purchasing . . . a dwelling" or "(2) [t]he selling, brokering, or appraising of residential real property." *Id.* § 3605(b). FHA claims may be prosecuted on the basis of disparate treatment, *i.e.*, that plaintiffs were treated differently because of their membership in a protected class, or on the basis of disparate impact, *i.e.*, that the defendant's practices have a proportionally greater negative impact on minority populations. *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995).

The ECOA states, in relevant part, that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1) (2000). "The ECOA provides for a private cause of action based on disparate impact or disparate treatment." 15 U.S.C. § 1691e(c) (2000); *see also Powell*, 310 F. Supp. 2d 481, 487 (N.D.N.Y. 2004) (citing *Jones v. Ford Motor Credit Co.*, 2002 WL 88431, at *2 (S.D.N.Y. Jan. 22, 2002), *rev'd on other grounds*, 358 F.3d 205 (2d Cir. 2004)). To state an ECOA claim, a plaintiff must allege that (1) he was a member of a protected class, (2) he was qualified for the loan requested, (3) the lender declined the loan, and (4) the lender showed a preference for a non-protected individual. *Powell*, 310 F. Supp.2d at 487.

Here, Plaintiffs clearly acknowledge that they are proceeding on a disparate impact theory. (*See id.* at 7 (discussing how Plaintiffs would establish "[t]he existence of a disparate impact").) As Defendants note, Plaintiffs assert that their claims "arise from Corporate Defendants' use of a facially-neutral FHA overlay (and Individual Defendants' implementation

of that overlay) which had the *effect* of discriminating against Plaintiffs because of their African-Caribbean American heritage." (*See* Defendants' Joint Motion to Dismiss, Docket Entry No. 46 ("Defs. Mem." or "Joint Motion to Dismiss"), at 6 (emphasis in original); *see also* SAC at 15, 20, 30.) Accordingly, the Court will consider Plaintiffs' claims under a disparate impact theory.

In order to assert a violation of the FHA or ECOA based on a disparate impact theory, a plaintiff must "demonstrate that an outwardly neutral practice actually or predictably has a discriminatory effect; that is, has a significantly adverse or disproportionate impact on minorities, or perpetuates segregation." *Fair Housing in Huntington Committee Inc. v. Town of Huntington, New York*, 316 F.3d 357, 366 (2d Cir. 2003); *see also Fair Hous. Justice Ctr., Inc. v. Edgewater Park Owners Coop., Inc.*, 2012 WL 762323, at *10 (S.D.N.Y. Mar. 8, 2012) ("In a disparate impact analysis case, a plaintiff need not show that the defendant acted with discriminatory intent, rather, discriminatory effect is sufficient." (citing *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1217 (2d Cir. 1987))).

However, Defendants accurately state that "Plaintiffs fail to identify any such specific policy or practice as to any of the Corporate Defendants. Rather, Plaintiffs contend that their claims arise out of *unspecified* "'FHA underwriting policy overlays.'" (Defs. Mem. at 7 (citing SAC at 4).) This is insufficient for a disparate impact claim. *See Powell*, 310 F. Supp. 2d at 487 (holding that "[t]o establish a *prima facie* case under a disparate impact theory, a plaintiff must identify a specific policy or practice which the defendant has used to discriminate") (internal citation omitted). While Plaintiffs use the correct legal and technical buzzwords, in the absence of factual allegations, it is not enough to raise Plaintiffs' claims above the speculative level. *See Ng v. HSBC Mortg. Corp.*, 2009 U.S. Dist. LEXIS 125711, at *26-31 (E.D.N.Y. Dec. 15, 2009) (recommending dismissal of FHA claims because the facts were alleged in far too conclusory a

fashion and "the claims [were] alleged with little more than buzzwords and conclusory labels, in the absence of the requisite factual allegations"), *adopted*, 2010 U.S. Dist. LEXIS (March 10, 2010). Accordingly, in light of the pleading requirements set forth by *Iqbal* and *Twombly*, Plaintiffs' failure to provide factual allegations of a specific or particular practice used by Defendants requires dismissal of Plaintiffs' FHA and ECOA discrimination claims. *See Powell*, 310 F. Supp. 2d at 487-88, 489 ("Although a motion for dismissal under 12(b)(6) tests only the adequacy of a plaintiff's complaint, Defendants are correct in their assertion that Plaintiff alleges no specific policy to support her disparate impact [ECOA] claim;" "Plaintiff's claims under the FHA suffer from the same deficiencies as her claims under the ECOA.").

Plaintiffs' claims under a disparate impact theory also fail because Plaintiffs' do not plead any actual facts of discriminatory impact based on race; otherwise said, Plaintiffs have not pled the requisite adverse effect on the protected group. *See Powell*, 310 F. Supp. 2d at 487 (holding that "plaintiff… must also demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group"); *see also Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 421 F. App'x 97, 100 (2d Cir. 2011) (affirming dismissal of FHA and ECOA claims where plaintiff pled no facts demonstrating a discriminatory effect). In fact, Plaintiffs' own pleadings reveal their lack of evidence of a discriminatory effect. Plaintiffs present two different sources for "statistical evidence" for disparate impact, both of which fall short. (*See* SAC at 6-7.)

First, Plaintiffs' "invite the creation of a 'per se' evidentiary rule in that the [Defendants] . . . are chargeable with purposeful knowledge of [the FHA's] statutory goals and well established mandatory FHA underwriting terms/criteria for 3 and 4 unit properties." (*Id.* at 6.) Without any further explanation, Plaintiffs contend that this so-called evidentiary rule "evidences

a 'per se' willful disparate impact on African-Caribbean American," where there is either "[1] "denial of Plaintiffs' mortgage application without notice, or [2] application of subjective, arbitrary and unlawful underwriting policy overlays in a racial discriminatory manner; and that otherwise is in conflict FHA guidelines and directly contravenes the law pursuant to ECOA [and] FHA." (*Id.* at 6.) To the extent the Court is able to decipher what exactly Plaintiffs are requesting, the Court declines this invitation to alter Plaintiffs' pleading requirement as heaving no basis in law. Plaintiffs may not avoid making a *prima facia* showing of discriminatory impact by creating a nonsensical rule that would permit conclusory assertions to be disguised as supported, factual allegations.

Second, Plaintiffs "offer[] to procure and provide statistical evidence of disparate impact through a motion to discover," because they currently lack the necessary information to support their claim. (*See* SAC at 6.)[4] In fact, Plaintiffs state that they seek discovery because the detailed information they need to show disparate impact is within the possession and control of the Corporate Defendants. (*Id.* at 7.) Plaintiffs even admit, "Plaintiffs' mere assertion or general perception that a policy or practice disproportionately excludes or injures people [like] them on a prohibited basis may be insufficient for trial on the matter. Therefore, Plaintiffs seek the opportunity to establish disparate impact with particularized facts." (*Id.* at 7.) These admissions by Plaintiffs further support dismissal of these claims, as Plaintiffs cannot state a claim where they rely on the vague hope that discovery may show facts on which the claim could be based. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 … does not unlock the doors of discovery for a plaintiff

---

[4] Plaintiffs separately filed a motion for discovery, which sought "a list of all 3 and 4 unit FHA and *FHA look-a-like* mortgage acquisition loans/applications received by each of the Corporate Defendants in and from the New York Metropolitan area." (Motion for Discovery, Docket Entry No. 52, at 9.) (emphasis in original). Plaintiffs added that such discovery would "identify the specific policies or practices, which the Corporate Defendants has used in their race-based racketeering schemes and provide the statistical evidence, as is required, that these policies or actual practices has an adverse effect on the protected group. (*Id.* at 10.) This is motion was denied. (*See* Order dated January 16, 2015.)

armed with nothing more than conclusions"); *S. Cherry St. LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 113-14 (2d Cir. 2009) (noting that plaintiff's speculation that discovery would reveal facts to support claims "underscores, rather than cures, the deficiency in the Complaint"); *see also Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 176 (E.D.N.Y. 2006) (finding that plaintiff's request that court deny motion to dismiss "until he has had an opportunity to conduct further discovery . . . puts the cart before the horse and ignores the fact that discovery has to be tied to a pleading which passes muster under Rule 12(b)(6)"). Because Plaintiffs fail to sufficiently plead a under a disparate impact theory, Plaintiffs' claims under the FHA and the ECOA are dismissed.

## IV.     Plaintiffs Fail to Allege a RICO Violation Sufficiently

Plaintiffs' twenty-first through twenty-third claims allege violations of RICO. Defendants argue that Plaintiffs have failed to plead adequately the requisite elements of a RICO claim. The Court agrees. RICO was enacted to "'prevent organized crime from infiltrating America's legitimate business organizations.'" *Manley v. Doby*, 2012 WL 5866210, at *3 (E.D.N.Y. Nov. 19, 2012) (quoting *Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 371 (E.D.N.Y. 2002)). RICO contains a criminal provision, see 18 U.S.C. § 1962, and a civil provision, see 18 U.S.C. § 1964. The civil provision permits the recovery of treble damages and reasonable attorney's fees for any person who is "injured in his business or property by reason of a violation of" the criminal provision. 18 U.S.C. § 1964(c). "'Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Allstate Ins. Co. v. Valley Physical Med. & Rehabilitation, P.C.*, 2009 WL 3245388, at *3 (E.D.N.Y. Sept. 30, 2009) (citation omitted).

"To establish a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999). "The pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Lundy*, 711 F.3d at 119 (citing 18 U.S.C. § 1961(5)). "Racketeering activity" is defined to include a variety of federal and state crimes, including murder, kidnapping, gambling, arson, robbery, bribery, extortion, wire fraud, and mail fraud. *See* 18 U.S.C. § 1961(1).

Here, in describing the alleged enterprise, Plaintiffs state, "HUD Association-in-Fact RICO Enterprise is the passive national umbrella organization, headed by HUD Secretary Shaun Donovan and consist[s] of the several Association-in-Fact RICO Enterprises named below, which constitutes the active board of managers and moving forces within the HUD Association-in-Fact RICO Enterprise." (SAC at 39.) Plaintiffs contend that each of the Corporate Defendants is one of the "[c]onstituent members of the HUD Association-in-Fact RICO Enterprises." (*Id.*) Plaintiffs add that "[t]he HUD Association-in-Fact RICO Enterprise was formed for the purpose of generating revenue and maximizing profits by engaging in schemes to profile and rob FHA mortgage applicants with African Caribbean-American descent of their lawful entitlement to rental income credits; bribe and extort unwarranted compensating financial factors; notwithstanding the fact that they were otherwise qualified for the loans." (*Id.*) Further, Plaintiffs baldly claim Defendants committed mail and wire fraud, as well as acts of robbery, bribery, and extortion. (*Id.* at 40-41.) However, none of Plaintiffs' allegations amount to a

RICO predicate act, much less a pattern of racketeering activity or the existence of an enterprise, and thus, Plaintiffs' claims must be dismissed.

### a. Plaintiffs Have Not Adequately Alleged Mail and Wire Fraud

Defendants correctly note, "When, as here, a plaintiff alleges that violations of the mail or wire fraud statutes supply the racketeering activity element, the plaintiff must meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure." (Defs. Mem. at 12) (citing *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008).) "The elements of a mail or wire fraud violation are: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the mails or wires to further the scheme." *Grimes*, 785 F. Supp. 2d at 299 n.45. Such allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent. *Spool*, 520 F.3d at 185 (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)). Lastly, a plaintiff must also allege "the specific intent to deceive necessary to support the predicate acts." *McRae v. Norton*, 2011 WL 3625569, at *3 (E.D.N.Y. Apr. 11, 2011).

Here, Plaintiffs fail to allege a single fraudulent statement made by any Defendant, much less where and when any fraudulent statement took place. Instead, Plaintiffs state generically that Defendants "knowingly and willfully made materially false and fraudulent representations or omissions they knew to be false at the times of utterances, in order to restrain [Plaintiffs'] pursuit of the mortgage loans, upon which Plaintiffs relied to their injury." (SAC at 40-41.) Moreover, rather than alleging any fraudulent mail or wire transaction, or any facts suggesting that the transactions were part of a fraudulent scheme, Plaintiffs instead assert that Defendants used a web-based program, AppTaker, together with "interstate email," the "U.S. mail," and the "wires

for telephone communications in furtherance of the inherently unlawful acts." (*Id.* at 41.) In short, Plaintiffs fail to identify any specific fraudulent communications, who made the communications, what was communicated, where or when the communications took place, why the communications were fraudulent, or how the mails or wires were used to further an alleged fraud. Moreover, Plaintiffs have not alleged any facts, as to any Defendant, establishing intent to defraud. Consequently, Plaintiffs have failed to plead any predicate act of mail and wire fraud. *See Mills*, 12 F.3d at 1176.

### b. Plaintiffs Have Not Adequately Alleged Robbery, Bribery, or Extortion

With regard to the alleged predicate acts of robbery, bribery, and extortion, Defendants argue that "Plaintiffs utterly fail to allege any facts that, if true, would show that such conduct actually occurred." (Defs. Mem. at 13-14.) The Court agrees. For example, Plaintiffs allege that defendant Jeff Doocy "engaged in . . . an active extortionate threat of injuring the credit profiles of Plaintiffs Daniel I Frederick and Aaron T Frederick, by reporting a loan denial to credit bureaus." (SAC at 20-21.) Plaintiffs also allege that defendant Merissa Serna used "the robbery of rental income credits and mortgage loan credits . . . as the pretext for attempting to extort unwarranted mortgage underwriting terms -- surtaxes and penalties under threat of official denial and injury to the credit profiles of Plaintiffs Daniel I Frederick and Aaron T Frederick." (*Id.* at 27-28.) These sort of conclusory allegations, which make no mention of the substantive criminal statutes that would underlie such liability, are plainly insufficient as predicate acts to support a RICO claim.

Moreover, Defendants properly assert that "these purported 'predicate acts' are nothing more than allegations that three separate and distinct businesses (and their employees) independently concluded that Plaintiffs did not meet the underwriting requirements for the loans

Plaintiffs sought and attempted to work with Plaintiffs to try and get them approved." (Defs. Mem. at 14.) Plaintiffs may not support their RICO claim by generically labeling Defendants' purported actions as the statutory predicate crimes without more facts about what makes the actions in fact crimes. *See Gregoris Motors v. Nissan Motor Corp. in U.S.A.*, 630 F. Supp. 902, 913 (E.D.N.Y. 1986) (dismissing RICO claims, stating that "the conclusory nature of the allegations . . . parroting as they do statutory language without necessary facts, make them plainly inadequate"); *see also Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotations and citations omitted); *Fleming v. Hymes-Esposito*, 2013 WL 1285431, at *11 (S.D.N.Y. Mar. 29, 2013) (dismissing defendant's counterclaims for conspiracy and extortion, because they "are vague and do not rise to the required level of specificity for such allegations.").

### c. Plaintiffs Fail to Allege the Existence of an Enterprise

In addition to the above-mentioned shortcomings, Plaintiffs also fail to allege adequately the existence of an enterprise, which is a necessary element of a civil RICO claim. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). An "enterprise" is defined under RICO to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984) (citing 18 U.S.C. § 1961(4). The Supreme Court has further explained that, under RICO, an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Where a complaint alleges an association-in-fact enterprise, courts in the Second Circuit look to the "hierarchy, organization, and activities" of the association to determine whether "its members functioned as a unit." *First Capital Asset Mgmt. v. Saitwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004) (citations and quotations omitted). The Second Circuit has made clear that "the person and the enterprise referred to must be distinct," and, therefore, "a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994).

Here, Plaintiffs rely on an association-in-fact theory, but their sparse allegations do not suffice for establishing an association-in-fact enterprise. Plaintiffs allege that Defendants, in combination with HUD, all "constitute[] the active board of managers and moving forces within the HUD Association-in-Fact RICO Enterprise." (SAC at 39.) Further, Plaintiffs allege that the "HUD Association-in-Fact RICO Enterprise" consisted of smaller association-in-fact enterprises, including: the "WF Association-in-Fact Enterprise," consisting of WF and Mr. Doocy; the "NPF Association-in-Fact Enterprise," consisting of NPF and Ms. Serna; and the "FE Association-in-Fact Enterprise," consisting of FEM and Mr. Marino. (*Id.*)

While Plaintiffs offer personalized names for these so-called enterprises, Plaintiffs provide no facts indicating that Defendants associated together for a common purpose of engaging in a course of conduct. The allegations in the SAC are so disjointed and confusing that it is impossible to piece together any facts suggesting that Defendants functioned as a continuing unit. *See First Capital Asset Mgmt.*, 385 F.3d at 174-75 (finding that plaintiffs failed to adequately allege a RICO enterprises because they "failed to provide [the Court] with any solid information regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise . . . from which [the Court] could fairly conclude that its members function as a

unit" (internal quotation marks and citation omitted)); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 429 (S.D.N.Y. 2007) (finding that plaintiffs failed to adequately allege RICO enterprise because no facts alleged showed how defendants "improperly functioned as a unit"). Defendants accurately note that "Plaintiffs nowhere even mention how or whether each of the Defendants communicated with each other, nor how each of the sub-associations stands apart from their purported racketeering activities." (Defs. Mem. at 16.) Accordingly, Plaintiffs have failed to allege that Defendants "associated together for a common purpose of engaging in a course of conduct" and, therefore, have not satisfied the "enterprise" element of a RICO claim. *Turkette*, 452 U.S. at 583. Because Plaintiffs have failed to plead the requisite RICO elements, Plaintiffs' RICO claims are dismissed.

## V.     Plaintiffs Fail to State a Claim Under Any Common Law Theory

Plaintiffs assert various common law claims, including fraud, constructive fraud, fraudulent inducement, fraudulent misrepresentation, fraudulent concealment, aiding and abetting, tortious interference with contract, civil conspiracy, negligent hiring and supervision, and negligent misrepresentation. (SAC at 35-37.)

### a.   Plaintiffs Fail to Plead the Required Elements of Fraud with Particularity

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud. Thus, the Second Circuit held that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Mills*, 12 F.3d at 1175. The Second Circuit explained "that in order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills*,

12 F.3d at 1175. Additionally, "'plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" *Lerner*, 459 F.3d at 290 (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

With respect to Plaintiffs' common law causes of action under fraud theories, Defendants argue that "[c]ritically missing from the SAC are any allegations of fact that give rise to a strong inference of fraudulent intent by the Defendants." (Defs. Mem. at 20.) The Court agrees, as Plaintiffs only assert a single conclusory statement regarding Defendants' intent, namely that Defendants intentionally made false representations regarding "FHA's underwriting criteria for mortgage qualifying purposes" for the purpose of defrauding Plaintiffs so as to prohibit their qualification for mortgage loans. (*See* SAC at 36.) This conclusory allegation fails establish a strong inference of fraudulent intent under Rule 9(b); *see also Iqbal*, 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.). Moreover, Plaintiffs fails to allege any facts: (1) that Defendants had both motive and opportunity to commit fraud, or (2) constituting strong circumstantial evidence of their conscious misbehavior or recklessness. *See Shields*, 25 F.3d at 1128. Indeed, as Defendants correctly state, "Plaintiffs neglect to articulate any [credible] motivation as to why Defendants would make fraudulent misrepresentations that would result in Defendants purposefully denying qualified applicants a loan. (Defs. Mem. at 21.) Plaintiffs' allegations do not meet the heightened pleading requirements under Rule 9(b), and, therefore, Plaintiffs' claims sounding in common law fraud are dismissed.

### b. Plaintiffs Fail to State a Claim for Aiding and Abetting

Plaintiffs also allege that the Corporate Defendants "each aided and abetted each other and did verbally make material misrepresentations of fact." (SAC at 36.) Plaintiffs do not sufficiently allege their claim for aiding and abetting. "To establish liability for aiding and abetting fraud under New York law, 'the plaintiffs must show (1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.'" *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (quoting *Lerner*, 459 F.3d at 292.) Lastly, as with fraud claims, the plaintiff's aiding and abetting claim must meet the particularity requirements under Rule 9(b). *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000).

Here, because Plaintiffs have not properly alleged the existence of the underlying fraud, Plaintiffs' claim for aiding and abetting must be dismissed. Dismissal of this claim is further required because Plaintiffs make no allegations, much less with the particularity required under Rule 9(b), that any Defendants had actual knowledge of the alleged underlying fraud or that any Defendants provided substantial assistance to advance the fraud's commission. Accordingly, Plaintiffs' claim for aiding and abetting is dismissed.

### c. Plaintiffs Fail to State a Claim for Tortious Interference with Contract

To establish common law tortious interference with contract, a plaintiff must demonstrate "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach; and (4) damages." *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 285-286 (2d Cir. 2006). Here, Plaintiffs assert various allegations of tortious interference throughout their complaint, which are mostly incomprehensible. For example, Plaintiffs allege "acted within the

lawful scope of their employment or for the benefit of their employers or shareholders when they robbed or otherwise deprived Plaintiffs of their contractual rights and lawful entitlement to rental income credits, FHA mortgage loans and properties, supra, which constitutes tortuous [*sic*] interference with contract." (SAC at 34.) Similarly, Plaintiffs allege that the Corporate Defendants "knew or should have known that Plaintiffs sought FHA insured mortgage contracts to which they were lawfully entitled based on qualifying <u>rental income credits</u> but tortuously [*sic*] interfered with Plaintiffs['] contractual and due process rights to acquire said properties." (*Id.* at 12) (emphasis in original).

These conclusory statements are clearly insufficient to sustain a claim for tortious interference. *Iqbal*, 556 U.S. at 678. Plaintiffs have failed to set forth any factual allegations suggesting that Plaintiffs had a contract with a third party that Defendants knew about, or that Defendants intentionally procured the breach of that contract. Accordingly, Plaintiffs fail to state a claim for tortious interference with a contract. This claim is dismissed.

> **d. New York Law Does Not Recognize a Cause of Action for Civil Conspiracy**

Plaintiffs purport to bring a claim for "Civil Conspiracy." (SAC at 35, 37.) "It is a well-settled and often repeated principle of New York law that no cause of action lies for civil conspiracy." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir. 2005) (citing *Durant Bros. & Sons, Inc. v. Flushing Nat. Bank*, 755 F.2d 239, 251 (2d Cir. 1985)); *see also Romano v. Romano*, 2 A.D.3d 430, 432 (2d Dep't 2003) ("[A] cause of action sounding in civil conspiracy cannot stand alone, but stands or falls with the underlying tort."). Accordingly, Plaintiffs' claim for civil conspiracy fails to state a cause of action upon which they are entitled to relief, and is dismissed.

### e. Plaintiffs' Claims for Negligent Hiring and Retention and Negligent Representation Both Fail

Plaintiffs purport to bring a claim for "negligent representation" related to the abovementioned common law fraud claims. Plaintiffs also assert a claim for negligent supervision and hiring. With regard to this claim, Plaintiffs argue that the Corporate Defendants owed a duty to Plaintiffs to (1) "provide FHA rental income credits and mortgage loans in a manner that was free from unlawful discrimination; (2) "to properly hire, train and supervise employees/agents relative to compliance with the requirements of fair housing and other state and federal laws; as well as, the proper investigation and referral for prosecution for violations of same;" and (3) "to correct, disciple or terminate . . . employees/agents after Plaintiffs made express written complaints about their conduct." (SAC at 35.)

In general, to prevail on a negligence claim a plaintiff must establish: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of that duty; (3) a resulting injury. *See Akins v. Glens Falls City School District*, 53 N.Y.2d 325 (1981).

To establish a claim of negligent misrepresentation, a plaintiff must prove that: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). This special relationship "requires a closer degree of trust than an ordinary business relationship." *Fleet Bank v. Pine Knoll Corp.*, 290 A.D.2d 792 (3d Dep't 2002) (citations omitted).

To state a claim for negligent hiring and retention, in addition to the standard elements of negligence, Plaintiffs must plead that (1) the tortfeasor and defendant were in an employee-employer relationship; (2) the employer knew or should have known of the employee's propensity for the alleged tortious conduct; and (3) the tort allegedly was committed on the employer's premises or with the employer's chattels. *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).

Here, Plaintiffs incorrectly assert that Defendants owed them a fiduciary duty. (*See* SAC at 37). There is no such general duty between a lender and borrower under New York law. *See Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 137-38 (E.D.N.Y. 2010) ("As a general matter, a lender is not a fiduciary of its borrower under New York law."); *see also Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993) ("Under New York law, the usual relationship of bank and customer is that of debtor and creditor, and does not create a fiduciary relationship between the bank and its borrower or its guarantors.") (internal citation and quotation marks omitted)); *Fallon v. Wall Street Clearing Co*., 182 A.D.2d 245, 250 (1st Dept. 1992) ("A debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former.").

Moreover, with regard to the negligent misrepresentation claim, Plaintiffs fail to allege any special relationship with Defendants, which is fatal to this claim. *See Calcutti v. SBU, Inc.*, 223 F. Supp. 2d 517, 522 (S.D.N.Y. 2002) (dismissing negligence misrepresentation claim where parties did not have a relationship with each other separate from dealings related to contract). With regarding to their negligent hiring and retention claim, Plaintiffs, besides making mere conclusory statements, do not allege any facts that would establish that the Corporate Defendants knew, or had any reason to know, that any agents or employees had propensity to behave in a

negligent or wrongful manner.  *See Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 330 (S.D.N.Y. 2011) (dismissing claim for negligent hiring and retention where plaintiffs did not "allege[] any facts demonstrating that any of the named Defendants knew or should have known of their [employees'] propensity for tortious conduct, prior to the wrongdoing alleged in the Complaint").  Accordingly, Plaintiffs' negligence-based claims are dismissed.

## VI.     Plaintiffs Have Failed to Satisfy the Requirements for a Permanent Injunction

Plaintiffs request that the Court enter "a permanent mandatory injunction directing each of the above named Defendants, their agents, employees and successors" to (1) "exercise such reasonable care and due diligence as will prevent subjective application of FHA underwriting policy overlays that are raced based [*sic*] discriminatory lending practices in contravention of any/all laws enacted to prevent same;" (2) "make FHA 203(K) loans immediately available to Plaintiffs for 3 and 4 unit properties pursuant to FHA underwriting criteria;" and (3) "take all affirmative steps necessary to remedy the effects of their past unlawful, discriminatory conduct described [in the complaint] and to prevent similar occurrences in the future."  (SAC at 44.)

Plaintiffs have not satisfied the requirements for a permanent induction.  "An injunction is a matter of equitable discretion."  *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 32 (2008).  Nonetheless, a party seeking a permanent injunction first must show, "that it will be irreparably harmed if an injunction is not granted," and second, "actual success on the merits." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth*., 684 F.3d 286, 294 (2d Cir. 2011) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Bronx Household of Faith v. Bd. of Educ*., 331 F.3d 342, 348-49 (2d Cir. 2003)) (internal quotation marks omitted). In the instant action, Defendants contend that "Plaintiffs have utterly failed to establish the requisite irreparable harm, likelihood of success on the merits, or lack of adequate remedy at

law." (Defs. Mem. at 25.)  The Court concurs.  Indeed, Plaintiffs' arguments do not even purport to directly address these requirements.  Moreover, the sparse allegations in the SAC fail to establish any of the necessary requirements for preliminary injunctive relief.  *See, e.g.*, *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 421 (S.D.N.Y. 2013) (dismissing claim for injunctive relief).  Plaintiffs' request for a permanent injunction is denied.

## VII.    Plaintiffs' Opposition to the Joint Motion to Dismiss

Throughout their response to Defendants' Joint Motion to Dismiss, Plaintiffs contend that Defendants are seeking summary judgment.  (*See, e.g.*, Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss ("Pls. Opp."), Docket Entry No. 50, at 7, 9, 22, 26, 33.)  Plaintiffs are incorrect in their assertion.  While Defendants do reference, in the Joint Motion to Dismiss, the Administrative Complaints, the Determination and Orders, and Plaintiffs' prior civil action, these references do not convert the motion into a motion for summary judgment.  It is well settled that in disposing of a Rule 12(b)(6) motion to dismiss, a court's review of DHR or judicial proceedings (and to the papers filed or issued therein) does not trigger Rule 12(d)'s provision for conversion of the motion into one for summary judgment.  *See Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice.").

With regard to the scope of Plaintiffs' opposition papers, Defendants complain that "Plaintiffs themselves make repeated reference to facts that are not pleaded in the SAC and to documents that are not incorporated into the SAC by reference or that are otherwise proper for the Court to consider at the Rule 12(b)(6) stage." (Defendant's Reply in Support of Joint Motion to Dismiss, Docket Entry No. 55, at 2-3; *see*, *e.g.*, Pls. Opp. at 2 (assertions regarding non-FHA

loans), 4-5 (presenting hypothetical fact pattern), 11-12 (attempting to plead new facts regarding NPF), 16-18 (asserting that Defendants fail to comply with the Home Mortgage Disclosure Act), 21-22 (referencing "transcribed email communiques," many of which are not referenced in the SAC, and a purported "discrimination letter," which is similarly not referenced in the SAC), 24 (alleging that HUD somehow "deputized" the Corporate Defendants), and 31-32 (same).) Plaintiffs also raise a new claim in their opposition that Defendants violated New York General Business Law §349. (Defs. Opp. at 27-28.)

Defendants' objections are well founded. A plaintiff may not amend his or her pleadings through an opposition brief. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Willner v. Doar*, 2013 WL 4010205, at *5 (E.D.N.Y. Aug. 5, 2013) ("These allegations are nowhere to be found in plaintiff's amended complaint. Plaintiff may not amend his complaint through motion papers and the Court will not consider this newly raised claim.") Accordingly, the Court will disregard the abovementioned additional facts and newly raised claim that Plaintiffs sought to introduce in their response papers. For the above stated reasons, Defendants' motion to dismiss is granted in its entirety.

## VIII. Leave to Amend Would be Futile

Although Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court should freely grant a party leave to amend "when justice so requires," leave to amend is not required where, as here, a further amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given.") (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997)).

The Court is aware that leave to amend must be granted where a *pro se* pleading "gives any indication that a valid claim might be stated," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), but the allegations here raise no hint of a viable claim. Plaintiffs have been given ample opportunity to correct the deficiencies in their pleadings and have been unable to do so. Another attempt by Plaintiffs to state a claim in this action would be futile. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 390 (S.D.N.Y. 2003), *aff'd sub nom. Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005) (plaintiffs had no right to amend and re-plead where they had "ample opportunity to craft their complaints" and were on notice of pleading deficiencies). Therefore, because Plaintiffs' deficient pleading cannot be remedied by amendment, the SAC is dismissed with prejudice. *See Konowaloff v. Metro. Museum of Art*, 2011 WL 4430856, at *8 (S.D.N.Y. Sept. 22, 2011) *aff'd*, 702 F.3d 140 (2d Cir. 2012) ("This is [plaintiff's] second attempt to craft a viable complaint, and its shortcomings are of the sort that cannot be remedied by amendment. Accordingly, I dismiss the Amended Complaint with prejudice.").

## IX.  Plaintiffs' Cross-motion to "Dismiss"

On August 22, 2014, Plaintiffs filed a cross-motion seeking an order: (1) striking exhibits submitted with Defendants' Joint Motion to Dismiss, (2) enjoining Defendants from proffering certain evidence regarding non-discriminatory reasons for Defendants' denial of Plaintiffs' loan applications because Defendants allegedly did not comply with ECOA requirements, (3) granting Plaintiffs a judgment on the pleadings or summary judgment, and (4) granting leave for Plaintiffs to add the DHR as a defendant. (*See generally* Plaintiffs' Cross-motion ("Pls. Cross"), Docket Entry No. 51). This motion is without merit.

As an initial matter, in light of the Court's rulings discussed above, Plaintiffs' cross-motion is moot. Even assuming Plaintiffs' cross-motion is not moot, it lacks any substance. First, as noted above, the Court is permitted to consider the Administrative Complaints and the Determination and Orders. Moreover, Plaintiffs' attempt to relitigate the DHR's findings in this cross-motion is both inappropriate and unpersuasive. Second, the Court finds Plaintiffs' argument against the consideration of Defendants' non-discriminatory reasons for the denial of Plaintiffs' loan applications to be wholly unsupported. Plaintiffs provide no factual or legal support for their argument that the Court should not consider Defendants' evidence due to Defendants' purported non-compliance with an ECOA requirement that a lender send a written statement of the reasons for denial of a loan within thirty days of the denial. Third, Plaintiffs' motion for judgment on the pleadings and summary judgment is procedurally improper, because no pre-motion conference was sought before making the motion, as required by this Court's rules. The motion for summary judgment also is procedurally improper because it is unsupported by a Rule 56.1 statement, which is required by this District's Local Rules. Substantively, it is without merit because it seeks to obtain judgment on Plaintiffs' claims regarding Defendants' lending practices without providing undisputed facts on the basis of which such a motion could be granted. Indeed, the Court has already found that Defendants are entitled to a dismissal of the SAC for failure to state claim upon which relief may be granted, and there is nothing in Plaintiffs' motion for judgment on the pleadings or summary judgment that alters that conclusion.

Lastly, Plaintiffs' request for leave to amend their complaint to add the DHR is futile. Plaintiffs seek to add the DHR because it is supposedly "a RICO Enterprise Government unit as an indispensable party opponent and active member of the HUD Association-in-Fact RICO

Enterprise." (Pls. Cross at 7.) Plaintiffs add, *inter alia*, "DHR is liable for state and federal law violations against Plaintiffs including the commission of inter lia [*sic*], RICO predicate acts of obstruction of justice and witness tampering during the pendency of federal judicial proceedings." (*Id.*) Given the Second Circuit's guidance that a *pro se* complaint should not be dismissed without leave to amend unless amendment would be futile, *Cuoco*, 222 F.3d at 112, the Court has considered carefully whether leave to amend is warranted here to permit the addition of DHR as a defendant. Because the defects in Plaintiffs' claims are substantive and would not be cured if afforded an opportunity to amend, leave to amend is denied. Accordingly, Plaintiffs' cross-motion is denied in its entirety.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted, Plaintiffs' Second Amended Complaint is dismissed in its entirety, and Plaintiffs' Cross-motion is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
          March 30, 2015

_____
          /s/
          DORA L. IRIZARRY
          United States District Judge